May it please the court. My name is Roger Diamond. I'm the attorney for Ira Isaacs. I'd like to reserve about five minutes for any rebuttal that I might need. You look a little older than the last time I saw you. Well, I was going to say you look younger than the last time I saw you. I don't know, but I've been sworn to tell the truth, the whole truth. No, you look fine, Roger. Thank you so much. This case obviously is extremely important to my client, Mr. Isaacs, who's present watching all this. But I think it's also extremely important to the federal judiciary because this case is more than just a case involving double jeopardy. As important as that right is, it's a right of federal judges to be free of government intimidation. It also concerns the right of a federal judge to lead a normal life and not worry about some article that might appear or that the government might take advantage of some article. In this particular case, Judge Kaczynski, we believe, was intimidated by government threats to file a recusal motion not under seal based upon accusations of improper conduct. I know that I sent a recent letter to the Court under Rule 28J commenting on government threats, intimidation. The government is upset that I made that comment, but I think the record supports what happened in this case based upon our perception, and that's based on the transcript. It's actually in the excerpt of record, the transcript, page 94, where Mr. Whitehead, who was the prosecutor from the obscenity unit from the Department of Justice in Washington, D.C., said that the material on Judge Kaczynski's website contained the same or similar material to what was on trial. He said that right there in court in front of Judge Kaczynski, and then later during the telephone conversation of Friday, June 13, 2008, the one that Mr. Whitehead prepared an affidavit, he again referred to the conduct claiming that the material on Judge Kaczynski's website resembled the material that was on trial. These were outrageous statements, and then when Judge Kaczynski's clerk asked whether or not the recusal motion, which the government was going to file, and they're calling it now a submission rather than a motion, playing games here, the government was going to file that by 12 noon on Friday the 13th. That's when Judge Kaczynski abruptly declared a mistrial and recused himself, not taking into consideration at that time the interests of the defendant in proceeding with the trial. Mr. Dimer, you're not asking us to revisit Judge Kaczynski's decision to recuse himself, are you? Yes. Yes, we are. We're saying he should not have recused himself. That's his decision, isn't it? His decision was made in the context of a pending trial. If he had to – if he decided prior to trial that he just did not feel comfortable sitting in a particular case, we would say that the judge would have a lot of discretion to decide whether or not to ballot. He made a determination that he should recuse himself. Why should we second-guess that? Well, let's – well, if that's the case, let's assume he's – he had a golf date, hypothetically, and he wanted to end his participation on Friday so he can go on vacation. And he just said, I'm going to recuse myself. I don't care about the double jeopardy clause. I don't care about the defendant. I want to go play golf next week, so I'm recusing myself. I'm assuming – He's not a golfer. Right. He's not a golfer. What I'm saying, though – Let me tell you this. You see, I've known him since he was a little kid, you know. Right. In his 30s when he joined our court. The last thing in the world you want to say about Kaczynski is that he's intimidated, you know. Well, you were not – I don't – I had never seen anything that's intimidated. And even myself, when I look at him with my steel teeth, you know, nothing intimidates him. I will say this. The record shows that I did not want to agree to postpone the trial two more days, which is what the government was asking, right here in this building on the second floor, because I was concerned about the scheduling of a witness. My client, Ira Isaacs, to his credit, noticed how the judge, Kaczynski, was trembling, upset, visibly upset. And Mr. Isaacs, to his credit, said to me, given the two-day continuance so we can get things sorted out, he was visibly shaken and upset about what was going on with the government making the comment about the fact that his material on his website resembled what was being tried. And we had just watched two movies that were pretty outrageous. So we believe that the judge was concerned about his own personal reputation based upon what the government was suggesting it was going to do by virtue of a recusal motion. If the judge felt, Judge Kaczynski felt, that there were grounds, proper grounds for recusal, why didn't he recuse himself on Wednesday, June 11th? We're focusing on what, on Judge King's rulings? I beg your pardon? We're focusing on Judge King's rulings. Well, technically that's true, except that Judge King took no testimony. He simply reviewed the record. So you are in the same position that Judge King was in, in reviewing this case, because you have the same record that he had. So I don't believe that you're telling us things that aren't in the record. Well, no, the record shows that when … About him being visibly nervous. Well, on June 11th, Wednesday, on June 11th, when I was saying to the judge we didn't want to delay, we wanted to come back on Thursday, June 12th, because I was concerned about scheduling a witness, Dr. Nair, the record shows that after I conferred with Mr. Isaacs, Isaacs told me that – Isaacs said we'll agree to the delay. There was a request for a delay. But the point is, and I want to get back to Judge Pius' question, which is do you have the right to second-guess Judge Kaczynski's decision to recuse himself? I say by all means, yes, because if the recusal is improper, then the mistrial should not have been declared and we would not have to stand a second trial. Well, he made a decision under the circumstances that he thought it was in the best interest. You know, somebody would be looking, as I think it – he wasn't biased in any way personally, but somebody looking objectively at it might think that the judge was unable to be fair. He didn't say that in his order, Your Honor. No. That's the way it – That's the standard. That's the way it looks. Well, okay. So he made a decision to disqualify himself, and later on, what was it, a day or two later or that same day, he declares a mistrial. The same day, simultaneously on Friday? He declares a mistrial. And that's what we're really looking at is what are the consequences of that mistrial? Well, except I don't think you can consider the two together. And one of the problems I have, frankly – I'm going to concede that I have a difficult time on this point, but I can overcome it – is the Jeremiel case where Judge Claiborne was indicted in the middle of a trial that he was conducting in Las Vegas. And when he learned of his indictment, he called the lawyers into his chambers and said, I'm going to recuse myself and declare a mistrial. And so the question was whether or not that was proper. And assuming that the recuser was proper in that case, because he had been indicted. That was – that was – Harry Claiborne. It was upheld. That's right. And I think this case falls within that Jeremiah ruling. That's the problem. Because in both instances, the judge – there was – in both instances, there was involved something that personally was directed at the judge. Well, we're distinguishing being indicted, which would be a valid ground to recuse oneself, because there one could legitimately say that if a judge has been indicted in the middle of a criminal trial, he probably shouldn't proceed with the case. And once the Ninth Circuit ruled that his recusal was proper, the next question was, should another judge have stepped in immediately and taken over the case? And the Ninth Circuit ruled on the appeal from the denial of the double jeopardy motion that once he became disqualified, he had to pull the plug on the entire trial and go over. So I have that precedent to deal with, which is why I want to focus more on the first issue, which is whether or not the recusal was proper. The government even – Why don't you deal with the second, which is your problem? Well, the reason – if we win on the first issue that the recusal was improper, then we don't need to deal with the second issue. But I would say that they are related. And my point is that with respect to recusal, the judge who decides whether to grant – whether to recuse himself has to consider the timing of the recusal order. If it's prior to the trial, I think a court and a judge has great leeway to decide whether to recuse himself because he doesn't feel comfortable with the case or because of possible problems. But once jeopardy attaches and you're in the middle of a trial, the judge has to be a little tougher in terms of staying with the case because the consequence of recusing himself could be a mistrial, which would implicate double jeopardy. Double jeopardy would not be implicated if the recusal were followed by another judge stepping in. Then the defendant would have no argument. You could not even raise on appeal from a conviction the improper recusal by the judge because the recusal would become moot. If you had another judge step in and take over the trial, which is what should have happened here, then we would have no argument that the judge either did or did not recuse himself because we couldn't point to any harm by any error. It's the consequence. Then you have the problem of a new judge who comes in. I know this is done, having to review the transcript. But in addition to that, the judge that has recused himself has made rulings during the course of that trial before he recused himself and all that. So a reasonable person could believe that during that period of time, the judge had certainly had a conflict. A reasonable person would think the judge had a conflict of interest. And here, like in Claiborne's matter, the judge was involved in a personal situation. That's where the government brought in. I thought about this a lot. That's where the government was involved. The government, which is a party to the trial over which Judge Claiborne was presiding, the government sought the indictment. You can distinguish almost any case on small facts. But I think the critical fact here is that both judges were in a personal situation that put them in a bad position, in an uncomfortable position. It's not an all fours, but it's close. But the judge should put the defendant's right to be free of double jeopardy, which is a constitutional right, the judge should put that interest ahead of his own personal interest if, in fact, he felt uncomfortable. Feeling uncomfortable is far different than being prejudiced. No, it's what the public perception is. What evidence is there of public perception? An L.A. Times article? One article? This is not like the courthouse was circled with demonstrators protesting the involvement of Judge. Well, there was a lot more to it than one L.A. Times article. The only thing in the record is the L.A. Times article. That's it. And as Judge Kaczynski himself said, and Jonas, ironically. It was on the news and it was widespread. That's not in the record. Well, we can take judicial notice of things, too, you know. Well, what the judge might have been personally embarrassed by the article in the Times as well as what other else might have been out in the media, that the judge was obligated to put the interest of the defendant over his own interest unless there was evidence that the public believed, and there is no evidence of that, that the public believed that Judge Kaczynski was biased against one side or the other. And all we have to do is look at the record. Prior to Judge Kaczynski recusing himself, he had made a number of rulings in the case favorable to the government on the definition of obscenity in terms of community standard, whether it's tolerance versus acceptance in the community, in terms of my opening statement, in terms of my attempt to impeach the FBI agent regarding the question of whether this case stemmed from a special obscenity unit out of Washington, D.C. involving then Attorney General Alberto Gonzalez and the President of the United States. On a lot of issues, Judge Kaczynski ruled against the defense. So any reasonable person viewing the facts of this case would not have believed that any of Judge Kaczynski's prior rulings favored the defense because they didn't. And so Judge King did not consider that, did not consider the favorable rulings towards the government. He could go either way. He could be you could argue that he might favor the defense or he could argue that he would favor the government. You could do that in any case. So it could go both ways. You know, but you want to you're already 10 seconds over time. Sorry. It's all right. Maybe we can add. In soccer, when you go over the 90 minutes, they add time. They call it extra time. So I will say this, that the double jeopardy issue cannot be divorced from the recusal issue. They're intertwined. These are tough cases. We're going to give it a lot of thought. But as I said, the defendant's right to be free of a second trial has to be given some weight here in the equation. And the issue of recusal has to be weighed against that. Now, obviously, an indictment by the government, who's a party to the case before Harry Claiborne, if Judge Claiborne is indicted by a grand jury at the request of the U.S. government, obviously there's going to be problems there in trying the case. That's different than simply an embarrassing newspaper article. The judge, who's an Article III lifetime appointment judge, has to be a little more thick-skinned in terms of an article in a newspaper. Yeah, well, let's forget about Claiborne. He was not treated fairly. You can read one of my dissents about that. But you owe us a minute. Okay. For rebuttal. We'll just take it off your next oral argument. Okay. Future case. Thank you. Does the Court have any other questions or comments? I will have some rebuttal time.  Thank you very much. Good morning, Your Honors, and may it please the Court. My name is Michael Rocker, and I'm an attorney with the Justice Department in Washington, D.C., representing the United States. As the Court's questions have made clear, there are, in effect, two issues in this case, the recusal issue and the mistrial issue. I want to just make a couple of very brief comments on the recusal issue, and then with the Court's permission, I'll turn to the mistrial point. Judge Pius, in response to your question, yes, in theory, the Court would have the prerogative to second-guess Judge Kaczynski's recusal determination. But as the Court is also aware, Judge Kaczynski, like any district judge who recuses himself, is entitled to very broad discretion. And he, of all people, knows what the facts and circumstances are that would create the appearance problem. And our position is not that he can't contest the recusal, but that he hasn't shown any basis for second-guessing it. The one point that I do want to make is that the proper way to look at it, there has to be some basis for the recusal. Yes. Well, there has to be a basis, and Judge Kaczynski found a basis, and you should accord him deference. Now, the primary argument that's being advanced here is, in effect, that Judge Kaczynski acted under duress because the government threatened him and coerced him and intimidated him. Now, I'll leave to the Court to decide the ---- Well, you are scary guys. Well, I certainly am, but I wasn't a member of the trial team, so ---- But let me say this, really, the salient point and the part that really, you know, what Mr. Dimon was referring to ---- I notice your hand is shaking, too. You know what? It's too much coughing. That's my problem. I'm on East Coast time, so I had an extra cup this morning. What I really want to get to is the notion that we threatened him. Judge King specifically considered that allegation, and what he found on page 8 of his order in footnote 9 is, as a matter of fact, on this record, there is, and I'm quoting, no credible evidence of a threat. So the whole argument that you should second guess it because we threatened him, it has no factual basis. There's been no argument that that finding is clearly erroneous, and that precludes any suggestion I would submit that the Court should second guess the recusal issue. If the Court has no other questions on the recusal point, let me turn to the mistrial, because I do think that is the central issue presented. The parties don't dispute what the applicable law is. The only question is how it applies. And let me just briefly summarize what we think the relevant principles are. Double jeopardy does not bar a retrial following a mistrial that is occasioned by a manifest necessity. And the determination of whether there's manifest necessity is entrusted to the district judge, and he's entitled to broad discretion in making that finding. And accordingly, under Arizona v. Washington, the Supreme Court decision, this Court should accord him substantial deference with respect to that finding of manifest necessity. And Judge King did precisely that. He reviewed the record in this case, and he made three basic determinations to support his conclusion that Judge Kaczynski had exercised sound judgment and sound discretion in declaring a mistrial. The first point that Judge King made was that Judge Kaczynski acted after giving the parties an opportunity to set forth their views on this matter. And, in fact, counsel for Mr. Isaacs explicitly stated on the record during the first colloquy that they opposed a mistrial. So Judge Kaczynski was not ignorant of the parties' views, and he certainly gave them an opportunity to submit their positions on the matter. The second point that Judge King emphasized is that Judge Kaczynski, trying to get the case correct, Judge King emphasized that Judge Kaczynski did not act precipitously, that his decision to declare a mistrial on Friday was not an abrupt reaction to the events as they were unfolding, but was better viewed as the culmination of two days of reflection and deliberation on the matter. This case is very much distinguishable from the classic abrupt declaration situation, as in Jorn, where the trial judge ruling from the bench doesn't give the parties the opportunity to comment, doesn't reflect on the matter. But here, so it's very different than what you have there. You have two days of reflection and deliberation, and that's a point that Judge King emphasized. And the third point, Your Honor, that Judge King emphasized is the point that, if I understand my opponent now this morning, they're basically conceding, which is that there was no other viable alternative to declaring a mistrial because of Jaramillo, the Claiborne case, as we've referred to it. And what Jaramillo establishes is the general principle that when a district court judge, obviously Judge Kaczynski sitting as a district court judge, recuses himself in the middle of a criminal proceeding because of his belief that there is an appearance of impropriety problem under 455A, you cannot then substitute a new judge to complete that trial. And what the court reasoned in Jaramillo is, sure, we can put a new judge in prospectively to cure whatever taint may have been associated with the now recused judge. But as Judge Pregerson pointed out, you have a problem retrospectively. The judge has made prior rulings in the case, and that's the problem that we can't purge by putting a new judge in. What this one --- Well, the parties could consent, couldn't they? You know, it's an interesting question. I don't know, to be honest. There's no reported case on the issue. I would think that because the rules specifically prescribe when you can have a judicial substitution, it's not clear to me that the parties could stipulate to sort of, you know, their own procedure when they think it's appropriate. I wouldn't foreclose that possibility, but what I would say is on this record, there was no discussion. There was no conversation. That would be a waiver of the double jeopardy issue by the defendant. Well, but the problem is I think what we're talking about is a waiver of the appearance of impartiality problem. And I'm not so sure. I'm not foreclosing that there couldn't be a stipulation, but what I'm suggesting on this record, there were no conversations between the parties. It wasn't as though Mr. Isaac said, hey, look, we've got this dilemma. If he declares, you know, if Judge Kaczynski recuses himself, would you stipulate to having a new judge come in? I'm not sure that that's valid. I think there are complicated questions that lie underneath the surface of that, which we pointed out in our brief. And I think there are some difficult questions about when the sitting trial judge on his own initiative has concluded that there is a legitimate appearance of partiality problem, whether or not the party should be free to stipulate to allow the judge to continue. Maybe, but on this record, the issue wasn't posed. It's more of a hypothetical. And so the basic point is that Judge King reviewed these three factors, that there was an opportunity to discuss the matter, to deliberate, and to provide the court with their views, that Judge Kaczynski acted with reflection and deliberation over a two-day period, and number three, that under the circumstances, there was no other viable alternative because of Jaramillo, that Judge King then concluded that Judge Kaczynski had exercised sound discretion and that, therefore, there was manifest necessity, and that's why he denied the motion to dismiss. I don't, you know, if the court has questions about our view, I mean, we think that Jaramillo is controlling it. To paraphrase Judge Pregerson, it may not be on all fours, but I think it's on at least three out of four. And the basic argument that we're hearing this morning is, well, that there was an indictment of a judge and here there was no indictment. I think that that's a distinction without a difference. I think that Jaramillo's holding is more broadly phrased in terms of recusals under 455A. In this particular context, how do you mesh Jaramillo with Bates, or do you? That's a fair question. I don't think in Jaramillo, though, I don't think in Bates we had a recusal situation. I don't think that there was – The judge declared a mistrial, right? Right. In Bates, the judge declared a mistrial, and one of the considerations under Bates is whether or not there are other alternatives. I confess I don't recall what the Court said in Bates, but I don't believe it discussed – Well, the opinion there talks about some indicators of what you should look at and whether or not it was proper. Exactly. And those are the – To declare a mistrial. And those are the three – One, you know, the opportunity to be heard on the matter. Correct. And two is, did he act abruptly or was it reflection and deliberation? And number three, were there viable alternatives? I don't remember on the facts whether or not there were. And the fourth was, was it for the benefit of the defendant? Benefits, right. But as the Court said in Chapman, at least when the first three factors uniformly point in the same direction as we think it does here, it's not clear how that fourth factor plays out, whether it's even a viable factor. You don't need to necessarily consider it. And we think the record in this case, based on the findings made by Judge King and based on the legal principles, we think that all three of the factors point uniformly in that direction. And so that's why I think – look, Judge King looked at this very carefully. He took the matter with the same degree of seriousness and gravity that Judge Kaczynski handled the matter. And I think given the deferential nature of the review, there's really been no arguments that are presented as to why this Court should overturn these rulings. And so if the Court has any further questions on either the recusal or the mistrial issue, I'm happy to entertain them. But I think that our brief speaks on the points, and we'd be happy to submit back the balance of our time, unless the Court has further questions. All right. Thank you. Thank you, Your Honor. Your Honors. There was no opportunity for deliberation to discussion. When we ended the session on Wednesday, June 11, the idea was to come back on Monday. The jury was told to come back on Monday. We were in recess for two days. There was no action by Judge Kaczynski in terms of the trial between Wednesday and Friday. There was supposed to be submissions. And then the clerk called, and this is in the record. It's in Mr. Whitehead's affidavit. The clerk, not Judge Kaczynski, his clerk called Mr. Whitehead, the prosecutor, and myself. We had a telephonic conference call on the question of the filing of the motions to discuss these issues. The plan was for the government to file a motion and then for me to file a written response. And then after all that, Judge Kaczynski would decide what to do. The clerk asked Mr. Whitehead, are you going to file under seal? He said no. And then at that moment before the 12 noon deadline, Judge Kaczynski from his chambers, there was no court session going on. We had not been in court since Wednesday, June 11th. On Friday, June 13th, from his chambers, Judge Kaczynski issues a quick order that's not even captioned properly, that contains no findings. He just says in light of public controversy surrounding my involvement in this case, I've concluded there's a manifest necessity to declare a mistrial. He doesn't say because the public is going to reasonably believe that I'm partial to one side or the other. He makes no findings. It's abrupt. He doesn't even caption it a mistrial order. There was no opportunity to discuss the issue. There was no opportunity to offer a stipulation that we would accept another judge, and Judge King was right there. These cases all involve their peculiar facts. Judge, you said that any lawyer can find distinctions in facts. Well, the courts have said that these are fact-intensive inquiries as to whether or not judges properly declare mistrials, properly recuse themselves. It's fact-intensive. In this particular case, under the Bates case, Judge Kaczynski did not follow the Bates case in that he did not give us an opportunity to thoroughly discuss the issues. It was all done very quickly. We were upstairs on the second floor. The jury went down to the hallway. We had a quick discussion right there in open court. There was nothing done in chambers. We had a chance to discuss the case deliberately. We didn't have any chance to file opposition, written documents, anything, and no opportunity. Wait. We know all this. And so you're still ---- Well, to say this was not abrupt. Huh? Mr. Rutgers says this was not an abrupt decision by Judge Kaczynski. You can't get any more abrupt than a faxed order done when the government says they're going to file not under seal a recusal motion after they've already told him in open court ---- Time out. Time out, you know. All right? So your time is up. We didn't have a chance to propose a stipulation to get another judge to come in there. King was available. Your time is up. Thank you, Your Honor.
judges: Pregerson, Noonan, Paez